Turley, J.
delivered the opinion of the court.
This bill is filed by the complainants, persons of color and slaves of the late Peter Singleton, deceased, against W. F. Daniel, the executor of his last will and testament, to have their freedom declared.
From the bill, exhibits and proof in the case, the following facts appear. The complainants were the slaves of Peter Singleton; at the January term, 1816, of the county court of Bedford county, State of Tennessee, Peter Singleton filed his petition before said court, in substance as follows:
“Peter Singleton upon petition sets forth, that after his death, and after the death of his wife, Sally, he wishes the following negroes (viz, the complainants) to be emancipated; and thereupon, it was ordered by the county court, that 'said slaves should be emancipated after the death of him, the said Peter, and his wife, Sally; he, the said Peter, having given bond and security as the law directs."’
It appears from the record of that term of the county court of Bedford, that there were present at the time this order was made, but three of the justices of the county, to wit, M. D. Mitchell, Jeremiah Dial, and Wm. Hartsfield.
Upon the subject of the emancipation of these slaves, nothing further was done, until the year 1839, when, upon the death of the said Peter Singleton, his will was proven in due form in the county court of Bedford; *308 by which he provides in relation to the subject matter, as follows:
“Whereas, I heretofore petitioned the county court of Bedford county, to emancipate all the slaves of which I was at that time possessed, and at the same time entered into bond and security to keep the county, and the State, free of any charge for their maintenance and support, agreeable to law then in force; and being still desirous, in all respects, to continue the proceedings of the county court, then had upon said petition, in full force and effect, and the emancipation of my said slaves then made, by and with the consent of the county court aforesaid, confirmed, I do will and bequeath their freedom to my negro slaves, Nelly, Patsy, &c., at the death of my wife, Sally Brown Singleton, and until that event happen, it is my will that they shall continue in the service of my wife, and be obedient to her will and authority, in pursuance of this, my last will and testament.
' I will that my executor, at the death of my wife, shall see that my said negroes shall be emancipated, in accordance with the petition and proceedings had thereon in the county court of Bedford county aforesaid.
I will, that should there be any legal and sufficient objection, from any cause whatever, to the emancipation of my said slaves, so that the same cannot be done and confirmed by the proceedings heretofore had and made in the county court of Bedford county as aforesaid, that my said executor shall, in due form, emancipate and set at liberty, each and every one of my said slaves before mentioned; provided, however, and upon condition, that said slaves mentioned shall be permitted by law to *309 remain in the State of Tennessee. In case my said slaves cannot, by the laws of Tennessee, be emancipated, either by the proceedings already had and done before the county court of Bedford, or by this my last will and testament, and remain in the State of Tennessee, then I do will and bequeath each and every one of the negroes above mentioned, to W. F. Daniel, who is the executor to the will.”
These are all the facts necessary to the solution of the question presented for our consideration; and that is, whether the negroes, slaves of the devisor, and the parties complainant to this bill, are entitled to freedom; or whether they are the slaves of W, F. Daniel, the defendant and executor of the will of Peter Singleton, deceased.
Before proceeding to discuss the questions arising in this case, under the will of Peter Singleton, and his previous action in the county court of- Bedford, relative to the emancipation of the complainants, it becomes necessary to examine the statutory provisions of the State, in relation to the emancipation of slaves.
Premising, that independent of statutory provisions, a slave owner might emancipate his slave, without other form than that which was necessary to show his intention to emancipate; it is to be observed, that by the act of 1801, ch. 27, any person being desirous of setting his slave free, might do so, upon petition to the court of the county, in which he resided, in which he should set forth his intentions and the motives ” of such emancipation; and if upon examination, the court should be of opinion that the emancipation would be consistent with the interest and policy of the state, the chairman should report accordingly; but that no such petition *310 should be granted, unless the petitioner should first enter into bond and security, to re-imburse such damages, as the county might sustain, in consequence of such slave becoming chargeable upon it; and that upon such requisition being complied with, such slave shall be held and deemed free. But provided that no such petition should be received unless nine or a majority of the justices of said county should be present; and in either case, a majority of two-thirds should concur, in order to emancipate such slave.
No further provision upon this subject was made by the State, till the act of 1829, ch. 29, was passed; by which it was provided, “ that when any person shall, by his last will, provide that any slaves shall be set free, it shall be the duty of the executor, to petition the county court accordingly; and if he shall fail to do so, any such slave may file a bill by his next friend; and upon its being* made appear to the court, that said slave ought, of right, to be free, it shall be so ordered by the court; which shall thereupon require bond with good security, to indemnify the county under the existing law on that subject,” viz, the act of 1801, ch. 27.
Next comes the act of 1831, ch. 102, which provides, “that it shall not be lawful, from and after the passage of the act, for any court, or any owner of a slave, to emancipate him or her, except on the express condition, that such slave shall be immediately removed from the State; and that bond and security, in a sum equal to the value of the slave, so to be emancipated, shall be given, conditioned that he or she shall forthwith remove from the State; which condition shall be a part of the judgment of the court.”
*311 The next and the only other statute that need be noticed in connection with this subject, is that of 1842, ch. 191, which provides, “that when any slave has been, or shall be, emancipated in this State, agreeably to the laws now in force, it shall be lawful for such person to prefer his petition to the county court of the county in which he or she resides, setting forth the causes, why he or she wishes to remain in the State; and if upon hearing the petition, and any evidence that may be adduced, the court is satisfied that the person making the application is of good character, and ought to be permitted to remain in the county, they may grant such privilege, upon condition, &c.”
Now, upon all these statutes, what are the principles of action in relation to the subject of emancipation ?
1. Under the act of 1801, an owner of slaves might emancipate them, by petition to the county court of the county in which he resided, upon his giving bond and security, to re-imburse the county such damages as it might sustain in consequence of such slaves becoming chargeable upon it; provided that nine, or a majority, of the justices of the county were present when the petition was presented, and that two-thirds thereof concurred in making the order to liberate such slaves.
2. Under the act of 1829, if any person shall, by his last will and testament, have directed any slave to be set free, and the executor shall fail or refuse to petition the county court accordingly, it shall be lawful for such slave to file a bill in equity, by his next friend; and upon its being made appear satisfactory to the court, that such slave ought, of right, to be set free, it shall be so adjudged, upon bond and security, as provided for by the act of 1801, ch. 27.
*312 3. Under the act of 1831, it shall not be lawful,' for any court to emancipate any slave, except on the express condition that he shall be immediately removed from the Stateand that before such emancipation shall be allowed, bond and security, in a sum equal to the value of such slave, shall be entered into, conditioned, that such slave shall forthwith remove from the State.
4. Under the act of 1842, ch. 191, the county court of the county in which a slave may have been emancipated, or any county in which he may reside, may, upon petition of such slave, permit him to remain in the county, if the court is satisfied that he is of good character, and ought to be permitted to remain in the county, upon condition, &c.
Now, let us apply these principles to the case in controversy. It appears that the testator, had the emancipation of the slaves, who are the complainants, greatly at heart, more so, unquestionably, than any thing else, in his last moments; and long before, so early as 1816, he attempted to emancipate them, under the provisions of the act of 1801. No doubt foe a great length of time, he supposed that he had done so legally; and so it would have been, had there been a sufficient number of the justices of Bedford county present when the order for that purpose was made; he lived long enough to find that this was not the case. Then, what does his will show in relation to this subject? the same primary anxiety that these slaves should still be emancipated; so strong is this, that he makes provision, not in one clause alone, but in several of his will to this effect. First, he refers to his action upon the subject in the county court of Bedford, in 1816; he says, “whereas, I have heretofore petitioned the county court of Bed- *313 ford, &c.; and being still anxious to continue the proceedings of the court then had, in full force and efFect, and the emancipation of my said slaves then made, perfected, I do will and bequeath them their freedom, upon the death of my wife, Sally Brown.”
Not satisfied with this, in the next clause he provides; “I will that my executor shall, at the death of my wife, see that my said slaves be emancipated, in accordance with the petition and proceedings had thereon in the county court of Bedford.”
Not satisfied with this, in the next clause he provides; “I will, that should there be any legal and sufficient objection, from any cause whatever, to the emancipation of my said slaves, so that it cannot be done and confirmed by the proceedings heretofore had and made, in the county of Bedford, then my said executor, shall, in due form, emancipate, and set at liberty, each and every one of my said slaves before mentioned; provided, however, that said slaves shall be permitted to remain in the State of Tennessee.” It is to be observed that herein first occurs any expression of his secondary intention, subservient to his primary, that these slaves should be permitted to remain in the State.
In the next clause he provides, “ that if there be any legal and sufficient objection whatever, by which my said slaves cannot be emancipated by the laws of the State, and remain in it, either under the proceeding had in the county court of Bedford, or under my will, I do will and bequeath them to my executor, W. F. Daniel.”
Now it is obvious, that there are two intents (which have been before hinted at) in this will. 1st. That the negroes of the testator should be emancipated. 2d. That *314 they should be permitted to remain in the State. If both these things cannot be attained, which shall prevail ? unquestionably that which is primary, in preference to that which is secondary; or in other words, that that which the testator most desired, shall prevail, over that which he least desired; unless the two intentions be so commingled that they cannot be separated.
We are free to admit that if a testator, in so many words, devise that his negroes shall be set free, if they can be permitted to remain in the State, and if not, that they shall belong to a devisee, that there is no further question; provided they cannot be emancipated and permitted to remain in the State.
But that is not this case; because we cannot arrive at such position, without rejecting all that portion of the will, providing for the absolute emancipation of the slaves, without regard to such provision.
It is a well settled principle, in the construction of wills, that if clauses are inconsistent, the primary provisions of the will shall prevail against the secondary.
Well, what are the primary clauses of this will, in relation to the emancipation of these slaves? That they shall be free; their freedom is willed, and is willed to them in express words, unrestricted; afterwards it is provided that if they cannot be freed so as to remain in the State, they shall be the property of the executor, the defendant.
We have heretofore held that a devise of freedom, is a substantive thing, whether it be recognized by the State or not; and that no one but the State can interfere in relation thereto.
Upon what principle, then, can this executor, devisee, object to this emancipation, unless it be, that the eman- *315 eipation cannot be effected according to law ? The slaves have acquired a right to their freedom inchoate, and they have the right to ask the protection of the law therefor, as far as it is given; they are not to be estopped, by the fact that the devisor, in a different clause of his will, has devised them to the executor, if they cannot be emancipated so as to remain in the State. If they chose to go out of it, what right has the executor, devisee, to complain? None, in our estimation, whatever.
Then the question at once arises, can they be emancipated, if they chose to go out of the State? To this proposition there is but one answer; they may.
The acts of 1829, ch. 29, and 1831, ch. 102, make express provisions for such emancipation, under the will of the testatoi’, as we construe it.
The act of 1829, expressly gives a court of chancery the power to emancipate in such case; and the act of 1831 restricts it to the case of a removal on the part of the manumitted slave from the State.
It is true that the act of 1829 confers this power of the court to the case in which the executor shall fail or refuse to apply to the county court to manumit; but In this case the executor is the legatee of the slaves if they be not manumitted, and we will not trust him with the sole exercise of this power; because there are too many temptations to abuse it; and moreover, it appears, from his answer, (with much special pleading in relation thereto,) that he has not made such application.
We thei’efore hold that this is a case for the exercise of the jurisdiction of a court of chancery, under the act of 1829, ch. 29, subject to the restrictions of the act *316 of 1831, ch. 102. And therefore declare that the petitioners shall be emancipated, upon their giving bond and security to remove forthwith from the State, which they must do, unless the county court shall permit them to remain in the county, according to the provisions of the act of 1842, ch. 191.